The opinion of the Court was delivered by
Nott, J.
The general rule of law, that not only deeds, but also all other contracts made by married women, are void, is not denied. 1 Black. Com. 444.
*243] There are, however, exceptions to that rule, as where the contract is for necessaries, &c. But then the action must be brought against the husband, the contract being obligatory on him only, and not on the wife. 1 Sid. 120. 1 Camp. 120, Waithman v. Wakefield. 1 Esp. Nisi Prius, 122, 231. And it seems now to be settled law in England, that “a husband and wife cannot, by any agreement between *themselves, change their legal capacities and characters, so that a woman can be sued as a feme sole, while the relation of marriage subsists, and she and her husband are living in Great Britain.” Marshall and Rutton, 8 Term Rep. 545. Wardell v. Gooch, 7 East, 582. And I am disposed to think that such is the law of this State. But where the husband is in circumstances not to be sued, as where he is an alien, enemy, or has abjured the realm, the wife, in the opinion -of Lord Coke, is chargeable as a feme sole. Co. Litt. 132-6, 133, a.
The inquiry will now be, how far a married woman, by becoming a sole trader, is released from the shackles which the common law imposes upon her by reason of her matrimonial contract; and what new disabilities she subjects herself to by such change of character ?
It seems, however, to be necessary, in the first place, to ascertain what is to be understood by the word trader. And I do not know where we shall find it better defined than in the English laws and decisions on the subject of bankruptcy. By the stat. 13 Eliz. c. 1, bankruptcy is confined to such persons as have used the trade of merchandise, or have sought their living by buying and selling. And under that statute, making bricks for sale, by a person not owning the soil, buying horses for the purpose of making a profit by re-selling, and not for one’s own uso, has been construed sucha, trading as would subject a person to the operation *519 of the bankrupt laws. 2 Black. Cora. 414, 415. 1 St. 513. 1 Term Rep. 511. But subsequent statutes were found necessary to embrace scriviners, bankers, brokers, and factors. Do. do. And Judge Blackstone, with these statutes before him, defines a bankrupt to be “ a trader who secretes himself, or does certain other acts tending to defraud his creditors.” 2 Com.'254. The same author further observes, that they allow the benefit of the laws of bankruptcy to none but actual traders. 2 Com. 413. The character of a feme covert sole trader appears to have originated in a custom of London, and from *thence, in all proba- . . bility, introduced into this country. In the English books she is ^ sometimes called a sole trader. Caudel v. Shaw, 4 Term Rep. 361. 3 Burr. 1116. Sometimes a feme sole merchant. 4 Cro. Car. 68. Langham v. The Wife of Bewit. And in 2 Black. Rep. 1191, Justice Yates says, that by the custom of London, a feme covert carrying on business on her account, is liable to her own debts, independent of her husband. It appears, therefore, that she is indiscriminately spoken of as a merchant, trader, and a feme covert, carrying on business on her account. I apprehend, however, that when Justice Yates speaks of one cart ying on business on her own account, he must mean business of merchant or trader. For I think it is now very well settled, that a trader means a person engaged in merchandise, or one who gets his living by buying and selling again for profit.
The words of our act are: “ And whereas feme coverts in this province, do sometimes contract &c. &c. : Be it therefore enacted, that any feme covert being a sole trader in this province, shall be liable to any suit or action to be brought against her for any debt contracted with her as a sole trader, and shall also have full power and authority to sue for and recover, (naming the husband for conformity sake,) any person whatsoever, all such debts as have or shall be contracted with her as a sole trader; and all proceedings to judgment and execution, by or against such feme covert, being a sole trader, shall be as if such woman were sole, and not under coverture. P. L. 190. 2 Brev. Dig. 348 [1] It is reasonable to presume, that this custom being derived from the custom of London, and the term, trade or trader, being borrowed from the English law, was intended to be used in our act, in the same manner as it had been previously understood there. A sole trader, therefore, under our act, must mean such a person, as in England, would be subject to the bankrupt laws. Or, if any custom or usage in this State will authorize a more latitudinary construction, it cannot be extended further than to embrace *the keepers of boarding houses, milliners, mantua makers, and persons engaged in such other trades or business as is usually *- carried on by women in this country.
The first question, then, is, whether the bond of a feme covert, acting in that character, is obligatory upon her, or absolutely void ?
It seems, that in England, such a bond would be void. 4 D. & E. 361. That opinion appears to be bottomed on two reasons:
1. Because she might thereby deprive the heir of his inheritance, by subjecting her lands to the payment of her debts.
2. Because the custom of London extends only to simple contract debts.
*520 The first is a reason of policy, which can have no application in this State, because lands are equally subject to the payment of debts due by simple contract as by bond.
The second is founded on a custom of which we know bat little, except that it exists.
But by our act, she is made liable to be sued for any debt which she may have contracted as sole trader, which embraces debts by bond, as well as all other debts. And this opinion appears to be supported by the reasoning in the case of Wallace v. Rippon, 2 Bay, 112. Indeed she must be presumed to possess all the powers necessary for carrying on the trade in which she is engaged. To which end, custom house bonds, and bonds usually required of retailers of spirituous liquors, and other bonds immediately counected with her particular trade, may be indispensably necessary.
But, 2d. I think this power is confined to such bonds as relate to, or are somehow connected with, her business as a sole trader. It is to be observed, that the character of sole trader is not constituted by any act of thelegislature ; it is only recognized as existing by custom. The act confers no power or privilege except that of suing and being sued. And it •=246] limits her authority to sue expressly to such debts “ as have *or shall be contracted with her as sole traderand it subjects her to actions only for debts contracted by her in that capacity. It goes on further to provide, that all the proceedings shall be carried on against her as if such woman was a feme sole. But it no where authorizes her to perform any other act as if she was a feme sole.
This view of the question appears to be further supported by the case of Lavie and another, assignees of Jane Gox, a bankrupt, against Phillips and others, assignees of John Gox, the husband of Jane, who was also a bankrupt. In that case two questions were decided : 1. That a commission of bankruptcy might issue against a feme covert, being a sole trader. 2. That it must be confined to her debts in the way of her trade. 3 Burrow, 1184. And Mr. Justice Aston says, “that this custom does not interfere with any marital rights ; it respects only trade and commerce.” It may not be clearly seen, at first view, what bonds or contracts will be considered as coming within this description, and there may be a difficulty in laying down a definite rule upon the subject. But I apprehend the difficulty will not be greater than it was under the laws of England, to determine who were the subjects of bankruptcy; or, in this State, to determine what books should be received in evidence under our acts, recognizing a custom of giving in evidence the shop books of merchants, tradesmen, and handicraftsmen. And although we cannot lay down, with mathematical precision, any rule by which to ascertain the character of a bond or other contract so made ; yet I think it may be made sufficiently definite for all practical purposes. Indeed, it may be determined by the same rule, by which we determine the character of the person, and we must leave this, like every other question of construction to be settled by successive decisions of our Courts. Neither can the terms of the contract alter the law in this respect. It is not in the power of the parties to dispense with the obligations growing out of the matrimo-*94.>77 relabions. The law *on this subject is built on the broad basis -* of public policy, which cannot be defeated by any agreement of *521 the parties. For instance, could the Court, by any contract entered into between a husband and wife, permit them to become witnesses for and against each other, or permit a feme covert to become bail to an action, or bound in a recognizance for her husband, or any other person ? The adoption of such a principle would be introducing a species of divorce not authorized by our laws.
The bond in this case is admitted to have been given for the debt of the husband, and to relieve him from imprisonment. It was therefore founded on a consideration unconnected with her business as a sole trader, and must be considered as null and void.
This view of the subject dispenses with the necessity of giving any opinion on the third and fourth grounds. I would nevertheless observe, that I think it would always be the safest course, even if it be not necessary when a feme covert gives a bond in the character of a sole trader, to let it be expressed on the face of the bond. But I cannot conceive it to be necessary in notes, bills of exchange, and such other papers as are the usual evidences of mercantile transactions.
It may also be further observed, with regard to the main question, that the privilege allowed to feme coverts of becoming sole traders, is contrary to the common law, and to the principles of our government; and the policy of which is, at best, doubtful. And our act, permitting them to sue and be sued, expressly declares its object to be the prevention of fraud. We ought not, therefore, to extend by construction a power which it appeals to be the object and policy of the law to restrain.
I am of opinion that a new trial ought to be granted.
Bay, Colcook, Johnson, BichaRdson and HugeR, JJ., concurred.
See 1 McM. 50; 1 Hill, 429 ; 3 Rich. 78 ; 4 MeC. 413.

 3 Stat. 620; see 2 Stat. 593; 6 Stat. 212, 236, ? 2.